AO 93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of | Case No. 21-5084MB |
| Information associated with the cellular telephone assigned call number (719)400-5826, that is stored at premises controlled by T-Mobile. | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of New Jersey:

### As further described in Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### As set forth in Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _6/8/21_ (*not to exceed 14 days*)
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate Judge on duty in the District of Arizona.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized (*check the appropriate box*)
☐ for____ days (*not to exceed 30*)     ☐ until, the facts justifying, the later specific date of _____.

Date:  May 25, 2021 @ 11:39am

_____
*Judge's signature*

City and state:  Phoenix, Arizona

Hon. ~~Diane~~ M. Fine, U.S. Magistrate Judge
Deborah  *Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (719) 400-5826, ("the Account"), that are stored at premises controlled by T-Mobile ("the Service Provider"), headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period February 1, 2021 to March 3, 2021.

  a.  The following information about the customers or subscribers of the Account:

   i.  Names (including subscriber names, user names, and screen names);

   ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.  Local and long-distance telephone connection records;

   iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.  Length of service (including start date) and types of service utilized;

   vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

2

      vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

     viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

     ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2113 (Bank Robbery) and 18 U.S.C. § 924(c) (Using, Carrying, and Brandishing a Firearm During a Crime of Violence) involving Jeffrey PATTERSON during the period February 1, 2021 to March 3, 2021.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| In the Matter of the Search of | Case No. 21 - 5084 MB |
|---|---|
| Information associated with the cellular telephone assigned call number (719) 400-5826, that is stored at premises controlled by T-Mobile. | |

## APPLICATION FOR A SEARCH WARRANT

I, TFO Dustin Hooker, a Task Force officer with the Federal Bureau of Investigation, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

### As further described in Attachment A

### This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A).

located in the District of New Jersey, there is now concealed:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| Title 18 U.S.C. § 2113 | Bank Robbery |
| Title 18 U.S.C. § 924(c) | Using, Carrying, and Brandishing a Firearm During a Crime of Violence |

The application is based on these facts:

### See attached Affidavit of TFO Dustin Hooker

☒ Continued on the attached sheet.
☐ Delayed notice of __ days is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Benjamin Goldberg BG

*Dustin Hooker*
*Applicant's Signature*

TFO Dustin Hooker, FBI
*Printed name and title*

Sworn telephonically before me

Date: May 25, 2021 @ 1:39 dm

*Judge's signature*

City and state: Phoenix, Arizona

Honorable Diane M. Fine, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (719) 400-5826, ("the Account"), that are stored at premises controlled by T-Mobile ("the Service Provider"), headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period February 1, 2021 to March 3, 2021.

a. The following information about the customers or subscribers of the Account:

 i. Names (including subscriber names, user names, and screen names);

 ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

 iii. Local and long-distance telephone connection records;

 iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

 v. Length of service (including start date) and types of service utilized;

 vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

2

    vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records.

b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

    i.   the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    ii.   information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2113 (Bank Robbery) and 18 U.S.C. § 924(c) (Using, Carrying, and Brandishing a Firearm During a Crime of Violence) involving Jeffrey PATTERSON during the period February 1, 2021 to March 3, 2021.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Dustin Hooker, a Task Force Officer with the Federal Bureau of Investigation, being first duly sworn, hereby depose and states as follows:

### I.    INTRODUCTION AND AGENT BACKGROUND

1.    I make this Affidavit in support of an application for a search warrant for information associated with a cellular telephone assigned call number (719) 400-5826 (the "**Target Telephone**"), which is stored at premises controlled by T-Mobile (the "Service Provider"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.  The information to be searched is described in the following paragraphs and in Attachment A.  This Affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Service Provider to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.    This is the second request I have made for a search warrant for this information associated with the **Target Telephone**. On April 19, 2021, the Honorable Michelle H. Burns authorized a similar search warrant for information associated with the **Target Telephone** (21-103MB).  The next day, I emailed the warrant to the FBI's technical assistance squad so it could be served on T-Mobile.  For unknown reasons, that email was sent to a spam folder and, after a follow-up request on May 5, it was discovered that because the warrant was never received, it also had not been served in the 14 days required by the original warrant.  I therefore make this second request.

3.    I am a Detective with the City of Phoenix Police Department and a Task Force Officer with the Federal Bureau of Investigation's ("FBI") Bank Robbery/Violent Crimes Task Force (the "Task Force").  I have been an officer with the City of Phoenix for

approximately 23 years, a Detective for five years, and assigned to the Task Force since February 2019. Prior to being assigned to the Task Force, I was assigned to the Violent Crimes Bureau/Robbery Unit with the Phoenix Police Department.

4.      The facts in this Affidavit come from my personal observations, my training and experience, information obtained from other agents and law enforcement officers working the investigation, and information obtained from witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2113 (Bank Robbery) and 18 U.S.C. § 924(c) (Using, Carrying, and Brandishing a Firearm During a Crime of Violence), have been committed by Jeffrey PATTERSON ("PATTERSON"). There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## II.      BASIS FOR PROBABLE CAUSE
### Arrest and Investigation

6.      The Task Force has been investigating a series of bank robberies committed within the District of Arizona since February 4, 2021, all in violation of 18 U.S.C. § 2113(a) and (d). Thus far, a total of eight bank robberies have been attributed to this series, including two bank robberies in Nevada. Following the third robbery, Task Force officers observed surveillance video of the suspect using a credit card at an ATM machine and later determined that the card was issued to Jeffrey PATTERSON. Officers ran a record check for PATTERSON and, using prior arrest photos, identified PATTERSON as the same individual in surveillance photos from prior robberies.

7.      On March 1, 2021, after PATTERSON had already been identified as a suspect in five prior bank robberies in Arizona, I ran PATTERSON's name through

2

Arizona Motor Vehicle Department ("MVD") records and discovered that PATTERSON had recently registered a gold Chrysler Town and Country minivan, bearing Arizona license plate 14A2TA, under his name and to an address in Chandler, Arizona. I interviewed the individual currently residing at that address, who told me he sold the Chrysler minivan to a white male named Jeff within the last two weeks. The individual helped PATTERSON transfer the title and allowed him to use his address in Arizona for registration.

8.       On March 2, 2021, law enforcement officers searched MVD records for license plate 14A2TA and found it was registered to a new individual and a new address in Phoenix. Investigators then conducted surveillance at the new address and found the gold minivan previously registered to PATTERSON. While conducting the surveillance, investigators observed a white male arrive on a motorcycle and then enter into a blue Ford Expedition. The individual bore a strong resemblance to PATTERSON and officers could see that he had the same distinct tattoos on his neck, fingers, and arms that officers had previously seen when reviewing photos of PATTERSON obtained after running a criminal records check. Due to the physical similarity, the officers followed the individual, who they later determined to be PATTERSON, in his vehicle.

9.       PATTERSON stopped at a Chase Bank in Phoenix, entered the bank and stayed inside for several minutes, then exited. Officers interviewed the Chase Bank employees, who said the individual had not robbed the bank.

10.       Investigators continued to follow PATTERSON, who eventually parked a block away from another Chase Bank, located at 17140 N. Cave Creek Road in Phoenix. PATTERSON entered the bank and exited a few minutes later, running back to his vehicle.

11.       Investigators contacted the employees inside the Chase Bank, who stated that a white male with tattoos on his arms and neck had just robbed the bank. According

to the employees, the individual approached a teller and produced a note stating, "All the money in your drawer. No dye packs or I start shooting this bitch up. Don't play with me. I'm not fucking with you. You have 20 seconds, better hurry." The teller provided $1,000, at which point the suspect pulled out what appeared to be a black handgun, pointed it at the victim teller, and demanded more money. The teller complied with the suspect and gave him more money, totaling approximately $2000.

12.     I reviewed stills from the surveillance videos and confirmed that the suspect, who was not covering his face, matched PATTERSON's description.

**Chase surveillance photos:**

 

13.     Officers continued following PATTERSON, who eventually stopped at a Discount Tire store. At approximately, 4:47 p.m., PATTERSON was arrested and placed into custody. He was transported to Phoenix Police Department headquarters, read his *Miranda* rights, and interviewed. At the time of his arrest, officers found a black airsoft pellet gun in the vehicle.

14.     During the interview, PATTERSON admitted to robbing the Chase Bank earlier that morning, as well as five other banks in Arizona (as detailed below) and two banks in Nevada. PATTERSON explained that he owed money to a Mexican cartel and robbed the banks to pay off his debt. He further explained that after each robbery, he would send some money back to Mexico and use the rest to live or purchase drugs.

15.     PATTERSON also claimed ownership of the airsoft gun found at the time of his arrest and told officers that he bought a .22 caliber Ruger handgun while in the Phoenix area. PATTERSON said he used the Ruger handgun while committing the robbery at the Chase Bank earlier that day and that he had also used it while committing a robbery at an ice cream shop in Nevada. PATTERSON said the gun was located under one of the seats of the vehicle he was arrested in.

16.     On March 5, 2021, a federal search and seizure warrant was obtained for PATTERSON's vehicle. Law enforcement officers searched the car and found the .22 caliber Ruger handgun under a seat in the vehicle, consistent with PATTERSON'S statements. Officers also found clothes in the vehicle matching those seen worn by the suspect on surveillance videos during the bank robberies.

17.     At the time of his arrest, PATTERSON was in possession of the **Target Telephone**. Research into the **Target Telephone** showed that the carrier for the phone number is T-Mobile and the subscriber is PATTERSON.

18.     PATTERSON is believed to have been in possession of the cell phone during each of the above-mentioned bank robberies and the cell-site location information would place PATTERSON at, or near, each bank robbery. Based on the foregoing facts and my training and experience, I believe there is probable cause that the information obtained from the subscriber information, call detail records with cell site activity, location information and historical billing records for the **Target Telephone** will provide evidence to further identify the activities of PATTERSON during the bank robberies.

19.     In my training and experience, I have learned that the Service Provider is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell

tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

20.     Based on my training and experience, I know that the Service Provider can collect cell-site data about the Target Telephone. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

21.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Telephone's user or users, and may assist in the identification of co-conspirators and/or victims.

6

**Summary of Five Prior Arizona Bank Robberies**

**Robbery 1, February 4, 2021: Wells Fargo Bank, 15760 N. Frank Lloyd Wright Blvd, Scottsdale, Arizona 85260**

22.     At approximately 1:45 p.m., the suspect entered Wells Fargo Bank, a federally insured institution. The suspect approached a teller, explained that he needed to make a withdrawal, and then handed a demand note that instructed the teller to produce $5,300 and demanded loose and mixed bills with no dye packs. The note also referenced the suspect's family and a cartel. The teller complied with the suspect's demands and gave him $5,300. The suspect then took the demand note and currency and exited the bank.

23.     Surveillance video, combined with the teller's description, showed the suspect as a white male, 5'7" to 5'9" tall, around 180 pounds, wearing a grey-and-white long-sleeve plaid button-up shirt, tan pants, a brown baseball hat with reflective sunglasses on the bill, a black bandana with white paisley print on his face, and white-and-black athletic shoes.

24.     A witness at the crime scene observed the suspect place a cup on the garbage can directly in front of the bank prior to the bank robbery. Employees at a neighboring gas station confirmed that an individual matching the suspect's description came in to take a complimentary water cup from the gas station prior to the bank robbery. Investigators with the Task Force obtained surveillance video from the gas station, which showed an individual wearing the same clothing as the suspect in the bank robbery, but with a bandana around his neck instead of covering his face.

7

**Wells Fargo surveillance photos:**

 

Superpumper Station surveillance photos:

 

### Robbery 2, February 10, 2021: Chase Bank, 13602 N. 7th Street, Phoenix, Arizona 85022

25.     At approximately 1:00 p.m., the suspect entered Chase Bank, a federally insured institution.  The suspect approached the teller window and handed the teller a note that read, "I owe $9,300 to a Mexican cartel. They want it tomorrow or my wife and son will die. This is not a game and I am desperate. I need $9,300 now. Loose bills, no bands. And no dye packs. If they don't get this money EVERYONE will die. PLEASE help me. Sound the alarm after I leave. Once I deliver the money I will turn myself in. I just want to save my family. The money now. You have 20 seconds of me staying nice, then I get angry."

26.     The teller supplied the full amount to the suspect.  The suspect tapped on the bandit barrier and indicated he wanted the demand note back, but the teller did not return it.  The suspect then exited the bank.

27.   Surveillance video, combined with the teller's description, showed the suspect as a a white male, 30-40 years old, between 5'8 and 5'11, approximately 180 pounds, with brown eyes and brown hair, wearing a camouflage baseball hat, a black facemask, a grey long sleeve shirt and blue jeans, and with tattoos on his fingers.

**Chase surveillance photos:**

 

## Robbery 3, February 16, 2021: Chase Bank, 4714 S. Rural Road, Tempe, Arizona 85282

28.   At approximately 12:22 p.m., the suspect entered Chase Bank, a federally insured institution.  The suspect approached the teller window and verbally demanded cash, while also handing the teller a note that said, "Don't Panic. Don't act nervous. I need this money or my family will be killed by a Mexican cartel. $8,000 all 100's. All loose bills. No bands. No dye packs or funny business. Or I will come back for you. 30 seconds. Do it now. All of it!"  The teller complied with the demand, giving the suspect $2,000.  The suspect then exited the bank.

29.   Surveillance video, combined with the teller's description, showed the suspect as a white male, around 5'8 or 5'9, wearing blue jeans, white-and-black athletic shoes, a dark facemask, a grey long-sleeve t-shirt with writing on left breast, a hat with

blue sunglasses on the top of the hat, and tattoos on the top of his left hand and on his left fingers.

30.     A review of surveillance video showed the suspect using the ATM machine outside the branch prior to the robbery.  The video shows the suspect place a card into the machine before removing it without seeming to conduct any transaction and walking into the bank.

31.     Task Force officers obtained the credit card number for the card used by the suspect and, using a subpoena from the Maricopa County Attorney's Office to obtain account holder information, determined the card used by the suspect was issued to Jeffery PATTERSON.

32.     Investigators queried PATTERSON's criminal history and discovered that he had two prior felony convictions out of Texas. In 1993, he was convicted of aggravated robbery, a felony, and sentenced to 20 years imprisonment.  He also was convicted in 2017 for a controlled substance violation, a felony, and sentenced to three years in prison.

33.     Investigators also obtained a recent booking photo of PATTERSON, as well as photos from the Texas Department of Corrections.  The photos showed PATTERSON has the same distinct tattoos on his hands and neck that investigators had observed on surveillance videos from the investigated bank robberies.

**Chase surveillance photos:**

 

**Robbery 4, February 18, 2021:  Wells Fargo Bank, 1004 W. Chandler Blvd,
Chandler, Arizona 85224**

34.    At approximately 11:25 a.m., the suspect entered Wells Fargo Bank, a
federally insured institution.  He approached a teller, where he said he needed to make a
withdrawal.  He handed the teller a note that said: "Don't panic. Act Normal. Nobody
will get hurt. No funny business until I leave. I'm listening to the police dispatch. I will
know. I need $5,000. $100 bills. All loose, no bands. Do something stupid and I will stop
being nice. You have something to lose, I don't, except my family who will die if I don't
get this money. You have 45 seconds. Do it now. Please."  The teller gave the suspect
$5,000 and the suspect then exited the bank.

35.    Surveillance video, combined with the teller's description, showed the
suspect as a white male, 5'8" to 5'09", approximately 160-180 pounds, with light-colored
eyes and tattoos on his neck, the top of his chest, the top of his hands, and his fingers.
Surveillance video, combined with the teller's description, show the suspect wearing
white-and-black athletic shoes, blue jeans, a black and dark grey long-sleeve plaid shirt,
and a black baseball hat with blue sunglasses on the top.  The suspect was also wearing a
black facemask.

**Wells Fargo surveillance photos:**

 

11

**Robbery 5, February 19, 2021:  National Bank of Arizona, 5360 N. La Cholla,**
**Tucson, AZ 85741**

36.     At approximately 12:37 p.m., the suspect entered a National Bank of
Arizona, a federally insured institution.  The suspect approached a teller window and
produced a note demanding $9,000 with no dye packs or tracking devices. The note also
mentioned that the suspect owed money and he needed the money for the safety of his
wife and child.  The bank teller provided $6,510 and the suspect then exited the bank. A
witness later told Task Force officers that a gold-colored minivan was seen leaving the
area from the same place the suspect was seen walking to as he left the bank.

37.     I reviewed stills from the bank's surveillance videos and, using the
booking photos as a comparison, identified the suspect as PATTERSON.

## AUTHORIZATION REQUEST

38.     Based on the foregoing, I request that the Court issue the proposed search
warrant, pursuant to 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure
41.

39.     I further request that the Court direct the Service Provider to disclose to the
government any information described in Section I of Attachment B that is within its
possession, custody, or control.  Because the warrant will be served on the Service
Provider, who will then compile the requested records at a time convenient to it, reasonable
cause exists to permit the execution of the requested warrant at any time in the day or night.


Respectfully submitted,

*Dustin Hooker*
TFO Dustin Hooker
Federal Bureau of Investigation

12

Subscribed and sworn telephonically before me this 25 day of May, 2021. @ 11:39 am

HONORABLE ~~DIANE~~ M. FINE
United States Magistrate Judge

13